**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **JAMES HILL, D.O.** | § | **PLAINTIFF** |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 1:06CV243-LG-JMR** |
| | § | |
| **GORDON H. MANSFIELD, ACTING** | § | |
| **SECRETARY, DEPARTMENT OF** | § | |
| **VETERANS AFFAIRS** | § | **DEFENDANT** |

**MEMORANDUM OPINION AND ORDER
GRANTING PARTIAL SUMMARY JUDGMENT**

**BEFORE THE COURT** is the Motion for Summary Judgment [30] filed by Defendant

Gordon H. Mansfield, Acting Secretary, Department of Veterans Affairs.  Plaintiff James Hill,

D.O., has responded to the Motion, and Defendant has replied.  Upon reviewing the submissions of

the parties and the relevant law, the Court finds that Defendant's Motion should be granted.

However, Defendant did not seek summary judgment as to Plaintiff's hostile work environment

claim, and therefore that claim is still pending before this Court.

**FACTS**

Plaintiff, who was born on September 22, 1935, began working as a licensed osteopath at

the Veterans Administration Hospital in Marion, Indiana, in approximately 1990.  (Attach. A to

Def.'s Mot. at 7, 10, 11).  In either 1993 or 1994, he transferred to the Veterans Administration

Hospital in Biloxi, Mississippi.  (Attach. A to Def.'s Mot. at 12).  Initially, he worked in the

outpatient clinic and the emergency room, but in approximately 1999, he began working in the

extended care facility at the hospital.  (Attach. A to Def.'s Mot. at 12-13).  In early 2004, the

hospital began a peer review program in which each physician's records were reviewed for quality

of patient care.  (Attach. A to Def.'s Mot. at 25-26).  Every two years, each physician's privileges

to practice at the hospital came up for renewal.  (Attach. A to Def.'s Mot. at 36). On or about

March 17, 2004, when Plaintiff's privileges came up for renewal, he was provided with a

Memorandum from his immediate supervisor, Dr. C. Diane Knight, in which she explained that

"credentialing issues" had arisen concerning Plaintiff during the peer review, specifically with

regard to Coumadin management, use of PRN medications, and prolonged use of potentially-

harmful drugs.[1]  (Attach. A to Def.'s Mot. at Ex. 2).  As a result, she stated that Plaintiff's

privileges would be renewed for ninety days, rather than the standard two years, so that an

additional review of his patient charts could be conducted.  (Attach. A to Def.'s Mot. at Ex. 2).

On or about May 13, 2004, Plaintiff was provided with another Memorandum from Dr.

Knight, in which she discussed additional concerns that arose in the peer review that was

conducted on May 12, 2004.  (Attach. A to Def.'s Mot. at Ex. 2).  At his deposition, Plaintiff

testified that in approximately May of 2004, two physicians, Dr. K.C. Roberts and Dr. Fernandes,

informed him that he was "on a hit list of older, experienced physicians that the administration

wanted out."  (Ex. A to Pl.'s Resp. at 46).  Plaintiff further testified that these physicians learned

about this "hit list" while attending executive meetings at the hospital.  (Ex. A to Pl.'s Resp. at 49).

When the ninety-day renewal of Plaintiff's privileges expired on July 22, 2004, he was

informed that his privileges would not be renewed and would be held in abeyance.  (Attach. A to

Def.'s Mot. at Ex. 1).  Since his privileges were not renewed, he was not capable of practicing

medicine at the hospital.  (Attach. A to Def.'s Mot. at 22).  He was placed on involuntary paid

leave pending formal review of his performance on August 13, 2004.  (Attach. A to Def.'s Mot. at

Ex. 1).  He was asked to clean out his office and leave.  (Attach. A to Def.'s Mot. at 23).  He was

---

[1] Coumadin is a blood thinner, and "PRN" means "as needed."

informed that his privileges were not renewed due to substandard care of his patients.  (Attach. A to Def.'s Mot. at 24).

Plaintiff was eventually provided with notice that the Executive Committee of the Medical Staff had unanimously recommended that his privileges be revoked.[2]  (Attach. A to Def.'s Mot. at Ex. 6).  The subject line of the notice provided: "Proposed Discharge."  (Attach. A to Def.'s Mot. at Ex. 6).  Plaintiff was given fourteen days to reply to the notice of proposed discharge.  (Attach. A to Def.'s Mot. at Ex. 6).  The notice provided that a final decision concerning the proposed discharge had not been made, and that any reply to the notice would be given full and impartial consideration.  (Attach. A to Def.'s Mot. at Ex. 6). Plaintiff responded to the notice of proposed discharge on October 25, 2004, objecting to the notice and explaining the difficulties that he had in obtaining the information that he needed to respond to the notice.

On November 3, 2004, Plaintiff resigned his position. (Ex. A to Pl.'s Resp. at 94).  He testified that Julie Catellier, the Director of the Hospital, was expected to make the final decision concerning the notice of proposed discharge on the following day.  (Ex. A to Pl.'s Resp. at 93).  Plaintiff explained that he chose to retire rather than risk losing insurance benefits in the event he was discharged.  (Ex. A to Pl.'s Resp. at 93).  He testified that no one told him that he would be terminated, but he expected that he would be terminated if he did not resign.  (Ex. A to Pl.'s Resp. at 94-95).

On March 21, 2006, Plaintiff filed this lawsuit against the Secretary of the Department of Veterans Affairs, alleging disparate treatment based on age, hostile work environment, and violation of 42 U.S.C. §1983.  He seeks back pay and compensatory damages, including damages

---

[2] This document is not dated and it is unclear when it was drafted or when it was provided to Plaintiff.

for harm to his reputation, emotional pain and suffering, and loss of enjoyment of life.  Plaintiff's

Section 1983 claim was dismissed by Stipulation [7] entered on November 16, 2006.  On

November 5, 2007, Defendant filed a Motion for Summary Judgment seeking summary judgment

as to Plaintiff's age discrimination claim, or in the alternative, partial summary judgment as to

Plaintiff's claim for compensatory damages and back pay.  Defendant did not request summary

judgment regarding Plaintiff's hostile work environment claim.

**DISCUSSION**

**AGE DISCRIMINATION**

The Age Discrimination in Employment Act provides: "It shall be unlawful for an

employer . . . to discharge any individual or otherwise discriminate against any individual with

respect to his compensation, terms, condition, or privileges of employment, because of such

individual's age."  29 U.S.C. § 623(a)(1).  "A plaintiff can demonstrate age discrimination in two

ways, either through: direct evidence or by an indirect or inferential [circumstantial] method of

proof."  *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (quoting *Rachid v. Jack In

The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).  "If the plaintiff produces direct evidence that

discriminatory animus played a role in the decision at issue, the burden of persuasion shifts to the

defendant, who must prove that it would have taken the same action regardless of discriminatory

animus."  *Sandstad v. CB Richard Ellis*, 309 F.3d 893, 896 (5th Cir. 2002) (citing *Price

Waterhouse v. Hopkins*, 490 U.S. 228, 252-53 (1989)).  If an inference is required for the evidence

to be probative as to the employer's discriminatory animus in firing the employee, the evidence is

circumstantial, not direct.  *Sandstad*, 309 F.3d at 897-98.

Defendant asserts that Plaintiff's testimony that, in approximately May of 2004, two

physicians, Dr. K.C. Roberts and Dr. Ferdandes informed him that he was "on a hit list of older,

-4-

experienced physicians that the administration wanted out" constitutes inadmissible hearsay that cannot be relied upon in opposition to a motion for summary judgment.  (Ex. A to Pl.'s Resp. at 46).  However, under the Federal Rules of Evidence, "[h]earsay within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules."  FED. R. EVID. 805.  "A statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship."  FED. R. EVID. 801(d)(2)(D).  "After the fact of the agency is established, Rule 801(d)(2)(D) requires only that the statement 'concern a matter within the scope of the agency or employment.'"  *Nekolny v. Painter*, 653 F.2d 1164, 1171 (7th Cir. 1981), *quoted in Corley v. Burger King Corp.*, 56 F.3d 709 (5th Cir. 1995).  In a recent, unpublished opinion, the Fifth Circuit discussed the admissibility of double hearsay in an employment discrimination case.  *See Ramirez v. Gonzalez*, 225 Fed. Appx. 203 (5th Cir. Jan. 30, 2007).  In *Ramirez*, the plaintiff relied on a union president's testimony that a legal secretary had told her that the office manager had made negative comments about the plaintiff's union membership.  *Ramirez*, 225 Fed. Appx. at *6.  The Court held that the office manager's statement to the legal secretary would probably fall within the party opponent exception, but the Court held that the legal secretary's statement to the union president was made outside the scope of her employment because the legal secretary was not involved in the decision to terminate the plaintiff.  *Id.*  Therefore, the Court held that the statement was inadmissible hearsay that could not be relied upon in opposition to the employer's motion for summary judgment.  *Id.*

In the present case, Plaintiff testified that, in May of 2004, Dr. Roberts and Dr. Fernandes learned about the "hit list"of older physicians while attending executive committee meetings at the

hospital, and then informed him of the hit list.  (Ex. A to Pl.'s Resp. at 49).  Dr. Fernandes had

access to the executive committee meeting because he was the union president, and Dr. Roberts

had access to the executive committee meeting in his capacity as acting chief of medicine, a

position that he temporarily occupied in the chief's absence.  (Ex. A to Pl.'s Resp. at 46,49).

During that same month, Plaintiff received a Memorandum from Dr. Knight, in which she

discussed concerns that arose in the peer review that was conducted on May 12, 2004.  (Attach. A

to Def.'s Mot. at Ex. 2).  The executive committee later unanimously voted to recommend that

Plaintiff be discharged.   (Attach. A to Def.'s Mot. at Ex. 6).  The alleged statements made during

the executive committee meeting concerning the "hit list" would potentially fall within the party

opponent exception, since they were presumably made by a member of the committee concerning a

matter within the course and scope of employment.  However, pursuant to the reasoning set forth

by the Fifth Circuit in *Ramirez*, the statements allegedly made by Dr. Fernandes and Dr. Roberts to

Plaintiff do not concern a matter within the course and scope of their employment since there is no

evidence that these individuals were involved in the decision to propose that Plaintiff be

discharged.  Therefore, Plaintiff's testimony concerning this matter is inadmissible hearsay and

cannot be used as direct evidence of discriminatory animus.  *See Warfield v. Byron*, 436 F.3d 551,

559 (5th Cir. 2006) (noting that hearsay evidence is inadmissible for summary judgment purposes

under FED. R. CIV. P. 56).

  Plaintiff also contends that he was told that he "should just retire" during the meeting at

which he was placed on leave and that he was essentially told that he had enough leave to retire.

The Court has not been able to locate any testimony in Plaintiff's deposition that he was told he

"should just retire."   Additionally, the actual testimony by Plaintiff concerning the amount of leave

he had accumulated was: "[A] statement that Dr. Knight said to me on July 22nd in front of Dr.

Allen was when this was all proposed and she already had it figured out and says, Oh well, you've got enough leave time to carry you through, go ahead and use your – you'll just use your leave time up." (Ex. A to Pl.'s Resp. at 98). Thus, the Court has not located any clear suggestion that Plaintiff retire in the record. Nevertheless, assuming *arguendo* that Plaintiff had produced evidence that it was suggested that he retire, the Fifth Circuit has previously held that a suggestion that an employee retire does not constitute direct evidence of discriminatory animus. *See Martin v. Bayland Inc.*, 181 Fed. Appx. 422, 423-24 (5th Cir. May 12, 2006).[3] Therefore, Plaintiff has not produced direct evidence of discrimination.

Therefore, the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), must be utilized. Plaintiff must first set forth a prima facie case of age discrimination by demonstrating: (1) that he was discharged; (2) he was qualified for the position at issue; (3) he was within the protected class; and (4) he was replaced by someone younger or outside the protected group, or otherwise discharged because of his age. *Berquist*, 500 F.3d at 349. The parties do not dispute that Plaintiff has met elements two and three, but disagree over whether Plaintiff has established elements one and four.

Plaintiff has not produced any evidence that he was replaced by someone younger or outside his protected group. He asserts that he was otherwise discharged because of his age, but again relies on the statements allegedly made to him by Dr. Fernandes and Dr. Roberts. However, as this Court has previously explained, this evidence is inadmissible hearsay. He also argues that alleged suggestions that he retire indicate that his age was a motivating factor in his termination,

---

[3] In *Bayland*, the employer stated: "I think it's time to hang it up and you - for you to retire." *Id.* at 423. The Court explained: "Martin's evidence cannot be considered direct because it requires one to infer that he was fired because of his age based on Moses' comment that it was time for him to retire. There is a link between retirement and age, but it is not a necessary one." *Id.* at 424.

but the Fifth Circuit has held that "the word 'retire' does not, by its very use, bear this kind of

weight." *Martin*, 181 Fed. Appx. at 426.  Therefore, since Plaintiff has not demonstrated that he

was replaced by someone younger or outside his protected group or that he was otherwise

discharged because of his age, he cannot set forth a prima facie claim of age discrimination.

HOSTILE WORK ENVIRONMENT

In its Motion, Defendant did not discuss Plaintiff's hostile work environment claim or seek

summary judgment concerning that claim.  Therefore, this Court cannot consider whether

Defendant is entitled to summary judgment as to that claim.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the Motion for Summary

Judgment [30] filed by Defendant Gordon H. Mansfield, Acting Secretary, Department of Veterans

Affairs, is **GRANTED**.  However, Defendant did not seek summary judgment with regard to

Plaintiff's hostile work environment claim, and therefore that claim remains pending before this

Court.

**SO ORDERED AND ADJUDGED** this the 18th day of December, 2007.


s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE